A. ALFRED SOLOMON, Appellant, v. JOAN G. VAN DE MAELE et al., Respondents.

First Department, June 18, 1964.

*Philip Handelman* of counsel (*Robert M. Trien* with him on the brief), for appellant.

*Ralph L. Ellis* of counsel (*Manning, Hollinger & Shea,* attorneys), for respondents.

BREITEL, J. P. Plaintiff, payee of a promissory note for $58,000, appeals from an order denying his motion for partial summary judgment (Rules Civ. Prac., rule 113; CPLR 3212). Defendants are the makers who gave the note in purchase of 24 shares of stock in a corporation, Graphic Arts Exhibit Building, Incorporated, an enterprise created to erect a pavilion at the current New York World's Fair. The motion was made only with respect to the complaint's first cause of action embracing the note and does not involve the second cause of action with respect to which plaintiff, concededly, is not entitled to summary judgment.

Defendants purport to raise issues of fact on the basis of a contemporaneous oral agreement that the note would never be payable if defendants did not elect to take the stock and that the note, in any event, was usurious. The note was given in replacement for a past due note in the lesser sum of $48,000, thus giving defendants an additional two months from the date

of the later note, and some five months from the due date of the first note, to pay the purchase price and take up the stock. Because the parol evidence rule excludes the contradictory parol proof and the defense of usury is not applicable, there are no triable issues. Hence, plaintiff is entitled to summary judgment on the first cause of action of his complaint.

While the original agreement to purchase the stock was never entirely reduced to writing there are several letters and documents signed by defendants, or one of them, confirming the fact of an agreement to sell, the initial issuance of a $48,000 note and the later substitution of a note for $58,000 for the price, and the placing of the stock in successive escrows to assure its delivery upon payment of the price. The first note payable in six months was signed only by defendant Van De Maele and it became due June 8, 1962. After default and some extensions by plaintiff, a new arrangement, including a new escrow agreement was effected. This time the note was signed by both defendants and the amount increased to $58,000. The note was dated September 14, 1962 and became due November 15, 1962. It was never paid and the escrowed stock never delivered to defendants.

During this period defendant O'Connor was heavily involved in the operation of the corporation, serving as its president. This ensued as part of the transactions which gave rise to several sales of stock, including the one in suit. As in this case, there have been defaults on the other purchases in which one or the other or both of defendants were parties. Defendant O'Connor's participation in the corporation was under a written arrangement which called for him to advance a loan of $100,000 to the corporation, receive a monthly expense allowance of $1,000, and receive 20% of its authorized stock.

As to the first escrow agreement with respect to the $48,000 sale of the stock, defendant O'Connor avers that it was orally agreed that if the notes were not paid, the escrow agent was to return all papers to plaintiff's lawyer. " This was ", he says, " in conformity with my understanding that if no payment was made, the deal was off." Such arrangement for defeasance is supported by no document and by no evidentiary facts. After the default on the $48,000 note, there were several abortive extensions. Plaintiff refused to grant any further extension unless a new note for $58,000 signed by both defendants was given. Defendants acceded. This exaction, defendants contend, was usurious as constituting an illegally excessive charge for forebearance on the payment of money, namely the $48,000 price.

A striking circumstance is that there are no writings which confirm defendants' contentions although so many phases of the

transactions between plaintiff and defendants were reduced to writing, or resulted in corroborative letters. Defendants' assertions, moreover, are not only commercially incredible and unsupported by any writing, but they are insufficient in law.

The making and delivery of the note is admitted. The delivery was not conditional. Defendants contend only that the existing obligations of the parties would terminate if defendants did not pay within the specified time. Hence, even under defendants' contentions, the note had valid inception. It thus constitutes at least a partial integration, and the express absolute obligation to pay cannot be contradicted by parol evidence of a condition permitting subsequent termination (*Jamestown Business Col. Assn.* v. *Allen,* 172 N. Y. 291; Restatement, Contracts, §§ 237, 239; 4 Williston, Contracts [3d ed.], § 644, pp. 1123–1125; cf. *Hoagland, Allum & Co.* v. *Allan-Norman Holding Corp.,* 228 App. Div. 133, 135–136).

Defendants also contend that there is an issue of fact with respect to usury, namely, whether the giving of the $58,000 note was a new sales transaction or the exaction of an additional sum of $10,000 for an extension of two months in which to pay the $48,000 antecedent indebtedness arising from the defaulted original sales agreement. But defendants, in order to succeed, must tender the issue, and they did not, that the additional $10,000 was given solely in exchange for an agreement to forbear in collecting on the $48,000 note.

The entire usury contention is based on the guarded and vague averment that counsel for plaintiff: " advised that if I [defendant O'Connor] needed more time to pay off the note he would discuss it with plaintiff — but it would require the payment of an additional $10,000 for such time. Since I had already heavily invested both time and money in the project, all of which would be lost if I did not consent to * * * [the] proposal, I agreed."

Defendants desired to purchase the stock; they went to great efforts to do so. After they had defaulted on the $48,000 note, plaintiff could refuse to deliver the stock, at least after a reasonable time had elapsed (Personal Property Law, §§ 132, 134, 141). Perhaps if defendants had performed during the reasonable time period, they could have had the stock. They, of course, did not perform, at any time. Two months elapsed between failure to pay the $48,000 note and the new $58,000 agreement. By this new agreement, plaintiff gave up his accrued remedies as an unpaid seller, including the right to resell the stock, and defendants obtained the right to purchase the stock they desired within another two months.

On these facts, it is not contended a loan is involved. The only and belated contention is that there might have been a "forbearance of any money" within the usury statute (General Business Law, § 371). Indeed, defendants do not plead forbearance but allege in their answer that the later agreement was one for the sale and purchase of stock, but at the higher price. This is fatal confession. Even giving defendants' late contention full value, the cases turning on "forbearance" have involved invariably a showing of a simple exaction of premium for extension of time to pay a debt. The usurer is such because he gives nothing but an extension of time to pay money at an excessive rate. (See, e.g., *London* v. *Toney,* 263 N. Y. 439; *Ganz* v. *Lancaster,* 169 N. Y. 357.) If something is given instead of or in addition to forbearance, the transaction is not within the statute. *Crippen* v. *Heermance* (9 Paige ch. 211) is especially instructive. A purchaser of land had paid of the $2,400 price all installments except a balance in the sum of $710. His application for an extension of time to pay was refused unless he would consent to "re-purchase" the land for an additional $300. In holding the supposed re-purchase to be "a mere device to evade the usury law" the Chancellor emphasized that, in equity, the property was already defendant's. Thus, it carefully distinguished the situation, existing in this case, in which the vendor actually had something to sell (pp. 213–214; accord, *Archer Motor Co.* v. *Relin,* 255 App. Div. 333, 334).

Of course, in this case, there is never a claim that the sale was a sham to conceal a usurious loan, on which the rule again would be different and in which event parol evidence would be admissible (Restatement, Contracts, § 529; cf. *Hartley* v. *Eagle Ins. Co.,* 222 N. Y. 178, 184–185; *Thurston* v. *Cornell,* 38 N. Y. 281, 285).

At most, therefore, there is involved a seller who drove a hard bargain. This is not "forbearance" of a money debt; instead, it is a sale of goods transaction. Since plaintiff could lawfully refuse to deliver the stock on the old agreement because of the default, he could exact a higher price under the new substituted agreement, no matter how unconscionable, before delivering. (See *McAnsh* v. *Blauner,* 222 App. Div. 381, affd. 248 N. Y. 537; *Thomas* v. *Knickerbocker Operating Co.,* 202 Misc. 286.)

*Frank* v. *Davis* (6 N. Y. S. 144, affd. 127 N. Y. 673) is illustrative of the distinction even with respect to a sale of real property. There, also, the vendee had defaulted in a prior sale. The subsequent sale provided for a mortgage with interest at the legal rate calculated from an earlier date. It was held that (p. 145): "No usury can be predicated on an agreement to sell

real estate and receive in payment therefor a purchase-money mortgage bearing the legal rate of interest, to be calculated from a date prior to the agreement. In such a contract the provision for computing interest from some past date is simply a means of increasing the purchase price.'' Thus the provision for interest was not artificially considered a separate transaction. In language quite appropriate to this case, the General Term opinion reads (p. 146): '' A transfer of the real property was the main object which both parties were seeking to accomplish. There is no evidence of any intent to use that transaction as a cloak for any usurious agreement, and, under such circumstances, ' refined theories should not be resorted to for the purpose of making out usury by construction ' *Clarke* v. *Sheehan,* 47 N. Y. 188, 195. Viewed as a whole, and fairly, the transaction seems to have been nothing more than a method of agreeing upon a higher purchase price for the land to be sold than that provided for in the first contract.''

The conclusion is simply stated: This is not a usury situation. Nothing akin to borrowing or lending of money is involved. Defendants never averred as much except by way of vague and conclusory argument with respect to facts that are not in dispute.

Accordingly, the order to the extent that it denied plaintiff's motion for summary judgment on the first cause of action should be modified, on the law, the defenses to such cause of action stricken, and the motion granted, in each instance with costs to plaintiff-appellant against defendants-respondents.

STEUER, J. (dissenting in part). On this motion for summary judgment the question presented is whether the record discloses a triable issue. I agree with the majority for the reasons stated, that no issue is presented by the contention that if defendants failed to pay and take up the stock by a specified date the note would not be payable. The situation is, however, otherwise as to the defense of usury. There we have two different versions of the nature of the transaction by which the note in suit was given and the prior note for $48,000 cancelled. If the transaction was, in fact, as the plaintiff claims, that is, a novation wherein the prior sale of the stock was abrogated and a new sale made for $58,000, no obstacle to recovery was presented. If on the other hand plaintiff agreed to extend the time for payment two months in consideration of an agreement to pay $10,000, there can be no doubt that the resulting exaction for forbearance taints the transaction with usury. I do not read the majority opinion to state otherwise. However, reliance is placed on the failure to make a suitable factual presentation. True, defendants plead a contrary situation and their proof is not supported

by anything other than their bare words. These are factors which have great cogency in resolving the issue but do not determine whether an issue exists. Nor is it particularly significant that the defense has been successful mostly in instances where the note was given for a loan rather than for the purchase of property. At most this factor renders the defense factually weak. It does not proscribe it.

The order should be affirmed.

VALENTE, McNALLY and STEVENS, JJ., concur with BREITEL, J. P.; STEUER, J., dissents and votes to affirm, in opinion.

Order, entered on September 11, 1963, so far as appealed from modified, on the law, with $20 costs and disbursements to appellant, the defenses to the first cause of action stricken, and the motion for summary judgment on the first cause of action granted, with $10 costs.