**HONG KONG DEPOSIT AND GUARANTY COMPANY LIMITED, Michael J. Johnson and Eoghan M. McMillan, as Liquidators of Hong Kong Deposit and Guaranty Company Limited, Plaintiffs,**

v.

**Milton L. HIBDON and John M. Shaheen, Defendants.**

**HONG KONG DEPOSIT AND GUARANTY COMPANY LIMITED, Michael J. Johnson and Eoghan M. McMillan, as Liquidators of Hong Kong Deposit and Guaranty Company Limited, Bil (Vila) Bank Limited, and Stanley Uren, as Liquidator of Bil (Vila) Bank Limited, Plaintiffs,**

v.

**Bradford A. SHAHEEN, Defendant.**

Nos. 83 Civ. 5895(EW), 83 Civ. 5896(EW).

United States District Court, S.D. New York.

June 19, 1985.

See also 602 F.Supp. 1378.

Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiffs; Evan A. Davis, Douglas B. Levene, New York City, Robert T. Greig, Mark P. Friedman, Hong Kong, of counsel.

Thomas A. Andrews, P.C., New York City, for defendant Bradford A. Shaheen; Howard F. Husum, New York City, of counsel.

EDWARD WEINFELD, District Judge.

This action, one of two consolidated actions, was instituted against the defendant

Bradford A. Shaheen ("Shaheen") for breach of written letter credit agreements and failure to pay when due two notes in the amounts of $1,244,737.45 and $614,250.00, respectively, which sums were advanced by plaintiff banks to the defendant upon his execution and delivery of the notes, as required by the terms of the letter agreements. Following pretrial discovery, plaintiffs, Hong Kong Deposit & Guaranty Co. Ltd. ("HKDG"), Bil (Vila) Bank Ltd., and their respective liquidators, move pursuant to Rule 56, Fed.R.Civ.P., for summary judgment in their favor upon their claims and dismissal of defendant's counterclaims for fraud and breach of an alleged oral commission contract.

## BACKGROUND

HKDG is now a defunct deposit-taking company created under the laws of Hong Kong and formerly engaged in the business of wholesale banking. Shaheen and his father, John Shaheen, claim to have acted in conjunction with another Hong Kong deposit-taking company, Tetra Finance (HK) Ltd. ("Tetra"), in creating HKDG with the view toward attracting petro-dollar deposits from Arab oil interests. Shaheen claims that, prior to the formation of HKDG in January 1981, officers of Tetra agreed that he and his father would be paid commissions for generating deposits into the new bank and Tetra and for their efforts in bringing prominent Arabs onto the Boards of HKDG and Tetra. In addition, it is claimed that a $20 million loan would be advanced on behalf of Bradford Shaheen from Phillipine sources to constitute his capital contribution to HKDG.

By letters dated November 12, 1981 and December 2, 1981, Shaheen "instructed" the managing director of HKDG, Eduardo Yotoko ("Yotoko"), to withdraw sums of $1,200,000 and $600,000, respectively, from HKDG's funds on deposit with Tetra and to advance those sums to him. Thereafter, on November 13 and December 4, Shaheen signed letter agreements with HKDG providing for short term loans, both ultimately due on January 22, 1982. At the time of the execution of the letter credit agreements and the notes, Shaheen was the owner of fifty percent of the capital stock of HKDG, and its president, although he now claims it was only a nominal title and that Tetra management fully controlled HKDG.

## DISCUSSION

Although the funds were advanced to Shaheen under his instructions and the written agreements and notes executed by him are unconditional and absolute, Shaheen, in opposing the motion for summary judgment, contends they do not state the "real" agreement of the parties—that it was different. He asserts that he had an understanding or oral agreement with Yotoko that the monies received by him were not a loan but were advances against either (1) sums due or to become due him pursuant to the oral commission arrangement entered into by his father with Tetra upon the formation of HKDG or (2) dividends to be declared or withdrawals of capital. Shaheen asserts, supported by an affidavit submitted by Yotoko, that because of liquidity problems, the advances were documented on the books of HKDG as a loan, i.e., an asset of HKDG. Finally, defendant contends that Yotoko fraudulently misrepresented to him that repayment of the loans would not be required.[1]

### The Commission Contract Claim

During the course of the litigation, Shaheen's commission contract claim has taken a zigzag course to hurdle legal barriers to his denial of liability for payment of the notes. Originally Shaheen claimed that, prior to the formation of HKDG, he and his father "on the one hand, and HKDG and Tetra, on the other hand, [agreed] that [they] would be paid commission fees ... on all deposits made in HKDG and/or Tetra as of the date HKDG was established in

---

1. Shaheen also phrases his claims in terms of estoppel. The Court's disposition of the fraud and commission contract claims is equally applicable with respect to any "estoppel" claim.

1981...." [2] When plaintiffs' counsel noted that any such agreement between Shaheen, a fifty percent shareholder and later a director, and HKDG would constitute a breach of fiduciary duty if not disclosed to the HKDG Board, Shaheen changed his claim, contending that under "the original understanding [his father] would be paid for the deposits which were made with HKDG and [he] would be paid on the deposits which were made into Tetra." [3]

This "clarification" is a palpable attempt to avoid plaintiffs' charge of a breach of fiduciary duty, for it is conceded that no commission arrangement was ever presented to, approved, or ratified by the Boards of HKDG or Tetra. However, in his attempt to avoid the charge, Shaheen has abandoned any claim against the plaintiffs herein upon the original pre-1981 commission contract. As defendant now characterizes that agreement, he was to receive commissions from Tetra, not HKDG. Tetra is not a party to this action. Accordingly, any affirmative defense or counterclaim based upon the pre-1981 agreement must fail.

█ Recognizing this failure, and repeatedly asserting that the commission contract claim has not been abandoned, Shaheen's counsel now contends that "the advances made to [Bradford Shaheen] in late 1981 ($1.8 million) ... were advances against commissions due *both* [John Shaheen and Bradford Shaheen] on a consolidated basis." [4] However, Shaheen has not provided one scrap of written evidence to give the slightest support to this claim. Thus, entirely apart from the invalidity of any such agreement in the absence of Board approval, Shaheen's claim runs squarely into the parol evidence rule. It is "[o]ne of the oldest and most settled principles of New York law" [5] that a litigant may not offer proof of prior or contemporaneous oral statements "to alter or refute the clear meaning of unambiguous terms of written, integrated contracts." [6]

"Unless we have reached the point in commercial life where as in *Alice in Wonderland,* words do not mean what they say, [defendant's] claim must fail." [7] Shaheen does not dispute that the written letter agreements are clear, unambiguous, complete, and unconditionally obligate him to repay the sums to HKDG.[8] However, he claims that the parol evidence rule is inapplicable to his commission claim since it falls within the condition precedent exception to that rule. Here, Shaheen places substantial reliance upon the affidavit of Yotoko, who states, "[i]t was understood at the time of [the] advances [to Shaheen] that, after a final accounting when the ultimate commissions due to the Shaheens would be determined, the subject advances

2. Joint Pretrial Order ¶¶ 1, 1(a) at 8.

3. Affidavit of John M. Shaheen, Oct. 1, 1984, at ¶ 26.

4. Affidavit of Howard F. Husum, Esq., Feb. 4, 1985, at ¶ 3.

5. *Meinrath v. Singer Co.,* 482 F.Supp. 457, 460 (S.D.N.Y.1979), *aff'd without opinion,* 697 F.2d 293 (2d Cir.1982).

6. *Id.* at 460; *see id.* at 460 n. 7 (citing cases); *Jamestown Business College Ass'n v. Allen,* 172 N.Y. 291, 64 N.E. 952 (1902); *Thomas v. Scutt,* 127 N.Y. 133, 27 N.E. 961 (1891).

7. *Meinrath v. Singer Co.,* 482 F.Supp. 457, 460 (S.D.N.Y.1979), *aff'd without opinion,* 697 F.2d 293 (2d Cir.1982).

8. Under New York law, these agreements are integrated as a matter of law. *Zugarek v. Walck,* 54 A.D.2d 1074, 1075, 388 N.Y.S.2d 756, 757 (4th Dep't 1976); *see Battery Steamship Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 & n. 3 (2d Cir.1975) (while under federal law and the law of most jurisdictions the question whether a written document is intended as a total integration of the terms of the parties' agreement is a question of fact, "under New York law a contract which appears complete on its face is an integrated agreement as a matter of law."); *Higgs v. De Maziroff,* 263 N.Y. 473, 189 N.E. 555 (1934); *Farm Stores, Inc. v. School Feeding Corp.,* 79 A.D.2d 504, 433 N.Y.S.2d 453 (1st Dep't 1980); *Piercy v. Citibank N.A.,* 101 Misc.2d 302, 303–04, 424 N.Y.S.2d 76, 77 (N.Y. Co.1978) ("We may not have recourse to the parol evidence to ascertain whether they do in fact include the entire agreement of the parties." (quoting *William H. Waters, Inc. v. March,* 240 A.D. 120, 125, 269 N.Y.S. 420, 426 (1st Dep't 1934)), *aff'd,* 48 N.Y.2d 900, 400 N.E.2d 1349, 424 N.Y.S.2d 897 (1979).

would be settled either as commissions or loans, depending upon the amount of commissions ultimately determined to be due." Based upon this statement, Shaheen claims that the notes were only "conditionally" enforceable; that is, that their enforcement was conditioned upon a determination that the advances exceeded the commissions to which he and his father allegedly were entitled "at which point the notes would become enforceable to the extent· of any such excess." [9]

Shaheen's own statement of his claim as well as the Yotoko affidavit make clear that the claimed oral understanding does not fall within the condition precedent exception to the parol evidence rule. Shaheen, in contending that the notes would be enforceable in the amount of any excess over and above commissions earned—an amount yet to be determined upon a final accounting at some unstated future date [10]—, relies upon a condition subsequent, not a condition precedent.[11] The lack of merit to this attempt to avoid payment of the notes is underscored by the fact that the loan agreements expressly enumerate three "conditions precedent," of which an accounting for commissions allegedly due is not one.

█ Even assuming that the claimed condition were a true condition precedent to the formation of a binding contract, it would still fall outside the parol evidence rule. The New York courts have expressly rejected oral evidence of conditions precedent where it expressly contradicts the terms of a written agreement.[12] Here, the contradiction is apparent: while, under the claimed oral understanding, the amount and the obligation to repay would be subject to change upon an accounting of commissions allegedly due, the written letter agreements and notes represent an absolute obligation to pay a sum certain.

### The Dividend/Withdrawal of Capital Claim

In a further effort to avoid his "irrevocabl[e] and unconditional[ ] promise to pay" [13] the amounts specified in the notes, Shaheen contends that, when he made that unequivocal commitment, he was told by Yotoko that the loans would be converted into nonrepayable withdrawals of surplus capital over and beyond his investment in HKDG. Unlike the commission contract claim, this claim is based upon Shaheen's deposition testimony as to the alleged oral representation and is without support in the Yotoko affidavit.

In response to the objection that this claim too runs afoul of the parol evidence rule, Shaheen relies upon another exception thereto: fraud. Shaheen contends that when the funds were withdrawn, Yotoko knew that Tetra had failed to obtain the promised $20 million loan from Phillipine sources which was to represent his capital investment in HKDG. Accordingly, Shaheen claims that at the time of the advances, it was "fraudulent[ly] misrepresent[ed] to him ... that he was, in effect, withdrawing his own money in the form of surplus accrued interest and earnings on his $20 million investment in HKDG ... which he need not repay." [14]

9. Defendant's Memorandum in Opposition at 5.

10. Yotoko states in his affidavit that the final accounting contemplated by the parties was never formally completed, "[d]ue to the problems experienced by HKDG and Tetra." Affidavit of Eduardo Yotoko, Aug. 2, 1983, at ¶ 6.

11. Under New York law, an "express absolute obligation to pay cannot be contradicted by parol evidence of a condition permitting subsequent termination." *Solomon v. Van De Maele,* 21 A.D.2d 396, 399, 250 N.Y.S.2d 772, 774 (1st Dep't 1964); *see Higgs v. De Maziroff,* 263 N.Y. 473, 189 N.E. 555 (1934); *C & N Trading Co.,* *Inc. v. Johnstown Fur Dressing Corp.,* 60 Misc.2d 1012, 304 N.Y.S.2d 405 (Ful.Co.1969).

12. *See, e.g., Meadow Brook Nat'l Bank v. Bzura,* 20 A.D.2d 287, 246 N.Y.S.2d 787 (1st Dep't 1964); *see Metropolitan Bank of Syracuse v. Brennan,* 48 A.D.2d 254, 368 N.Y.S.2d 914 (4th Dep't 1975).

13. Promissory Notes, Exhibits H, J, & L to Affidavit of Douglas B. Levene, Jan. 9, 1985.

14. Affidavit of Howard F. Husum, Esq., Jan. 29, 1985, at ¶ 15.

Shaheen's reliance upon an exception to the parol evidence rule is, again, without substance. Parol evidence will only be admitted to show fraud where it indicates "the intention of the parties that the entire contract was to be a nullity, not ... that only certain provisions of the agreement were not to be enforced"....[15] Here, Shaheen's proffer of an oral misrepresentation, if proven, would only modify, reduce, or offset the repayment provision of the written agreements. It would not destroy the loan contracts. Shaheen does not claim that there were no loan contracts between the parties. Rather, he contends there were loan agreements, which he signed and pursuant to which he accepted funds, but which, according to Yotoko, were later to be converted into a withdrawal of surplus capital. Shaheen has renounced any claim for rescission of the agreements, seeking to retain the contracts' benefits, but to defend upon the ground that the repayment provision was to be modified upon the occurrence of future events pursuant to an oral understanding. Accordingly, Shaheen's reliance on the fraud exception to the parol evidence rule is as unavailing as his attempt to bring his commission contract claim within the condition precedent exception.

Both efforts to evade the force of the parol evidence rule must, in any event, fail for it is well established New York law that "when the outcome of the admission of parol evidence ... would be contrary to law and public policy, such proof [is] inadmissible and the written contract [is to] be enforced according to its terms."[16] Both the alleged commission understanding as well as the alleged promise to convert the advances into capital withdrawals violate New York policy as well as Hong Kong law. Both are predicated upon a secret agreement that the loans were not really loans and did not have to be repaid. However the alleged "understanding" is characterized—as one for the payment of commissions or as one for the withdrawal of surplus capital—the fact remains that, under either of Shaheen's versions, the true nature of the transaction was concealed by the execution and delivery of the letter credit agreements and the notes under which the monies received by him were recorded on HKDG's books as a loan payable by him.

The New York courts have consistently rejected such claims for sound policy reasons.

> [W]hen [a party] execute[s] and deliver[s] to the plaintiff bank an instrument in the form of a note, [that party is] chargeable with knowledge that, for the accommodation of the bank, [he] was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.[17]

Shaheen readily admits, and in fact relies upon, the arrangement whereby the alleged commission payments or withdrawals were booked as loans because of the Bank's liquidity problems. Thus, even assuming the truth of his claim, Shaheen participated and effectively conspired with HKDG management to conceal the true nature of the agreement as a liability, in-

---

15. *Bersani v. General Accident Fire & Life Assur. Corp.,* 36 N.Y.2d 457, 461, 330 N.E.2d 68, 71, 369 N.Y.S.2d 108, 112 (1975); *see Meinrath v. Singer Co.,* 482 F.Supp. 457, 460 (S.D.N.Y.1979), *aff'd without opinion,* 697 F.2d 293 (2d Cir.1982).

16. *Bersani v. General Accident Fire & Life Assur. Corp.,* 36 N.Y.2d 457, 461, 330 N.E.2d 68, 71, 369 N.Y.S.2d 108, 112 (1975); *see also Bank of America Nat'l Trust & Savings v. Gillaizeau,* 593 F.Supp. 239 (S.D.N.Y.1984); cases cited *infra* note 17.

17. *Mount Vernon Trust Co. v. Bergoff,* 272 N.Y. 192, 196, 5 N.E.2d 196, 197 (1936); *see Fleck v. Bank of Suffolk Co.,* 67 A.D.2d 676, 412 N.Y.S.2d 177 (2d Dep't 1979) (mem.); *National Bank of Westchester v. Dogwood Constr. Corp.,* 47 A.D.2d 848, 365 N.Y.S.2d 554 (2d Dep't 1975) ("The *Bergoff* rule is well-established in this State) (citing cases); *see also D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 459, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942); *cf. Long Island Trust Co. v. International Institute for Packaging Educ., Ltd.,* 38 N.Y.2d 493, 344 N.E.2d 377, 381 N.Y.S.2d 445 (1976).

stead of as an asset. To permit defendant Shaheen to rely upon the proffered oral testimony, whether of a commission contract or a dividend/withdrawal, would sanction an agreement between the President and fifty percent shareholder of a bank to drain assets out of the bank while making it appear that a loan receivable remained on the bank's books. Such an agreement would not only constitute a fraud upon HKDG's other fifty percent shareholder, but also a fraud upon the bank's creditors and a violation of Hong Kong law with respect to the reporting and bookkeeping requirements of deposit-taking companies.[18] Moreover, the alleged oral understandings constitute a flagrant abuse of fiduciary obligation by not only Shaheen and his father, but also by Eduardo Yotoko, the managing director of HKDG. According to their self-styled descriptions, these were persons of considerable experience in financial, banking, and world trade affairs. Shaheen's attempts to vitiate the written letter of credit agreements and notes upon alleged oral "understandings" never presented to the Board of Directors of HKDG reflects recreant conduct and a betrayal of trust not only of HKDG depositors, but, too, of the other HKDG shareholder. What emerges from a careful and word by word reading of the voluminous papers submitted on this motion is a blatant attempt by the Shaheens acting in concert with Yotoko to defeat Bradford Shaheen's "irrevocabl[e] and unconditional[ ] promise to pay" the amount of monies received by him.

When faced with a claimed oral understanding of this character, New York courts have not hesitated to preclude a litigant from seeking to vary the terms of a written contract, even upon claims of fraud.[19] Accordingly, the court finds that Shaheen's affirmative defenses to enforcement of the loan agreements and notes fail as a matter of law. Because Shaheen's counterclaims are simply an attempt to enforce the same contentions advanced as affirmative defenses, they, too, are dismissed, and plaintiffs are entitled to judgment upon their claims.[20]

Submit order.

**18.** *See* Hong Kong Companies Ordinance §§ 121(1), 121(2), 121(4) (criminal penalties for failure of a director to take reasonable steps to secure compliance with requirements of keeping fair and true corporate records); Hong Kong Deposit-taking Companies Ordinance §§ 17(6), 17(7) (criminal penalties for false financial statements required to be submitted to Commissioner supervising deposit-taking companies).

**19.** *See, e.g., First Nat'l Bank of Hamden v. Kaufman,* 58 A.D.2d 668, 395 N.Y.S.2d 713 (3d Dep't 1977); *West End Federal Savings & Loan Assoc. of Albany v. DiBoise,* 19 A.D.2d 476, 244 N.Y.

S.2d 282 (3rd Dep't 1963); *see also* cases cited *supra* note 17.

**20.** Shaheen does not by his fraud counterclaim seek rescission, or even actual damages, but in effect specific enforcement of the claimed fraudulent promise to convert the advances into dividends and/or surplus capital. Thus, Shaheen seeks by way of damages the $1.8 million he borrowed from HKDG, yet has failed to provide facts upon which to base a claim for actual injury. *See Cayuga Harvester, Inc. v. Allis Chalmers Corp.,* 465 N.Y.S.2d 606, 618, 95 A.D.2d 5, 22–24 (4th Dep't 1983).