GENERAL FINANCE AND GUARANTY COMPANY, Appellant,

v.

O. E. SMITH, Appellee.

No. 6720.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 13, 1958.

Rehearing Denied Feb. 10, 1958.

532

Napier & Mote, Lubbock, for appellant.

Treadway & Blumrosen, Lubbock, for appellee.

NORTHCUTT, Justice.

This is an action to recover upon an oral contract. O. E. Smith was in the furniture business, and would sell his furniture upon some credit basis, taking a note and chattel mortgage upon the furniture sold to secure the balance due upon the purchase price. O. E. Smith, hereinafter referred to as appellee, made and entered into an oral contract with General Finance and Guaranty Company, hereinafter referred to as appellant, whereby appellee would sell to appellant the chattel mortgage and chattel mortgage notes without recourse on appellee. The appellant was to pay appellee in cash 90 per cent of the note if it were $150 or less, or 85 per cent of said value if it were above $150. The remaining 10 or 15 per cent, as the case might be, was held by the appellant in reserve, and this dispute arose on what the agreement was between the parties as to how the reserve was to be applied to delinquent accounts. Appellee contended that the reserve should only be applied against the account from which the reserve was originally withheld, and even then only to the extent of percentage the unpaid balance of the account bears to the original face value of the note, the result being that in no case could the reserve apply against any account exceeding the original 10 or 15 per cent reserve withheld, and the only circumstances under which the full amount of reserve could be so applied would be in those cases in which no payment at all was ever made upon the account by the debtor, in which case the appellant would lose its 90 per cent paid in cash, and the appellee would lose his full 10 or 15 per cent which was held in reserve. The appellant contends the reserve retained was being held to be used to apply to all unpaid notes; but appellee contended that the reserve withheld on each note by appellant was to be applied only to that particular note and was not to be applied on the unpaid portion of any other note. Appellee brought this suit to recover the reserve which he contends was due him under their contract. There is no question but what the parties entered into a contract whereby the appellant was to buy the mortgage notes from appellee, and the sole question being the manner in which the reserve account was to be applied.

The case was tried to a jury upon special issues. The issues and answers thereto established the following facts: that the reserve withheld on each contract should be applied proportionately to any loss on that particular contract only; that appellant's Agent, King, did not tell appellee, Smith, that the reserve from each contract should go into a reserve account to be used for payment of unpaid balances on all uncollectible contracts; that appellee continued to sell contracts to appellant after appellee learned appellant was applying the reserve to all uncollectible accounts with the understanding that appellant would change the handling of the reserve in order to comply with appellee's theory of the contract; that it was not a custom among organizations handling discount contracts to require a reserve fund to be used to take care of unpaid balances on all uncollectible accounts; that appellant did not at all times understand that the reserve account could be applied to any uncollectible accounts; that appellant would not have refused to purchase the discount contracts from appellee had it not understood that the reserve account could be applied to any uncollectible contracts; that appellee did not have full knowledge of the manner that appellant was applying the reserve funds to the payment of delinquent contracts generally prior to June 7, 1953, but

that appellant would not have refused after June 7, 1953, to purchase contracts from appellee but for the belief that the reserve from all contracts could be applied to any delinquent contract; that appellee did not consent to the manner in which the appellant was handling the reserve funds; that appellee did not wait for an unreasonable length of time in filing this lawsuit to enforce his interpretation of the agreement and at the time of the making of the contract both parties fully understood the agreement of how the reserve account was to be applied on uncollectible contracts.

The parties stipulated that if the jury found that the contract between appellant and appellee was as alleged by appellee the appellant may agree to the figures and amounts alleged by appellee without prejudice to appellant's right to appeal, or the appellant may request the court to appoint an auditor to audit the accounts arising out of the transfer of notes from appellee to appellant and to audit the reserve account to determine what amount, if any, the appellee was entitled to recover from appellant on such reserve account. Upon request being made by appellee for the court to appoint an auditor, the court found that appellant and appellee were unable to agree upon the amount due as found by the jury and appointed an auditor. The auditor completed his audit and returned his report to the court as to the amount due the appellee, and judgment was entered for the appellee for the sum as found by the auditor, and from this judgment appellant perfected this appeal.

By appellant's first point of error it is contended that the verdict of the jury is insufficient to support the judgment because such verdict only inquires of evidentiary and immaterial matters, the jury not having been submitted the ultimate issue in the case of whether or not the parties agreed to apply the reserve as alleged by appellee. There was no question but what the parties made and entered into a contract and the only dispute between them

was the manner in which the reserve was to be handled. Appellee contended it was agreed the reserve withheld from each contract was to be held and applied solely on the unpaid portion of that particular contract or note. Appellant contended the reserve withheld from each contract should go into a reserve account to be used for payment of unpaid balances on all uncollectible contracts. By separate issues the trial court submitted to the jury both contentions and the jury found that the reserve, according to the party's agreement, was to be applied to that particular contract only and not on all uncollectible contracts. There was no dispute between the parties about the appellee being entitled to receive the reserve withheld if there was no uncollectible contracts. If appellant had collected the full amount of all contracts, appellee, according to the undisputed testimony of both parties, would have been entitled to recover the reserve withheld. The ultimate issue to be determined was how the reserve withheld was to be applied. Was it to be applied to each contract only or on all uncollectible contracts? We are of the opinion the trial court correctly submitted the theory of both parties and we overrule appellant's first point of error.

Appellant presents its second, third and fourth points of error together. The second point presents that appellee is estopped from contending for a different application of the reserve from the way applied by appellant, and that the trial court erred in refusing appellant's motion for an instructed verdict on such grounds. The third point the trial court erred in submitting Special Issue 4 to the jury for the reason that there was neither pleadings nor evidence sufficient to authorize the submission of such issues. The fourth point presents that the findings of the jury in response to Special Issue 9 inquiring as to whether or not the appellee had full knowledge of the manner in which the appellant was applying the reserve fund to the payment of delinquent contracts generally prior to June 7, 1953, because the

same was not supported by the evidence and was contrary to the overwhelming weight of the evidence. Although these three points of error have been presented together, we will consider each of them separately. A party to a contract may by conduct on representation waive the performance of a condition thereof or be held estopped by such conduct or representations to deny that he has waived such performance. As stated in the case of Fitch v. Lomax, 16 S.W.2d 530, 531, 66 A.L.R. 758, by the Commission of Appeals:

"The jury having accepted Fitch's version that no such agreement was made, leaves the matter in the attitude that Henson and Lomax caused a provision to be inserted as a part of the consideration of the deed to which Fitch had not agreed. Under such circumstances, no duty devolved upon Fitch to notify Lomax and Henson of a fact of which they already had actual knowledge. Harrell v. City of Lufkin (Tex.Com.App.) 280 S.W. [174] 175; Miller v. Babb (Tex.Com.App.) 263 S.W. 253. * * *

"There is still another reason why the issue of estoppel is eliminated from the case under the jury's finding. In order for an estoppel to exist, it devolves upon the party seeking the advantage thereof to establish that he has been misled to his injury. Lomax and Henson have failed to establish that Fitch's silence in regard to the stipulation in question misled them to their injury. If Fitch had notified them immediately upon his discovery of the stipulation in the deed, they would not have been justified in refusing to pay the consideration actually agreed upon. The jury found that the real contract made by the parties was the deed minus the stipulation in question. If, therefore, they had been informed by Fitch that he had not agreed to the controverted stipulation, they would still have been legally compelled to perform the agreement which the jury

found represented the actual contract between the parties."

■■ The jury found with the appellee as to what the original contract was, then since it devolves upon the party seeking the advantage thereof to establish that he has been misled to his injury before he can insist upon estoppel, we think it is plain that the appellant was not injured in doing something contrary to what it had contracted to do. It was appellee's contention that he told appellant's agent, who was in charge, that to apply the reserve other than contended by appellee was not according to their agreement and appellant agreed to settle according to appellee's satisfaction. The jury further found that the appellant did not at all times understand that the reserve account could be applied to all uncollectible accounts, and also found the parties fully understood the agreement as to how the reserve was to be applied. Then if they did not at all times understand the reserve account could be applied to all uncollectible accounts, then at least part of the time they must have understood as the jury found their contract to be. Appellant would not be wrongfully injured by complying with its contract if it continued to buy contracts from appellee. The jury found appellee continued to sell contracts to appellant upon the understanding with appellant's agent that the handling of the reserve would be changed in order to comply with appellee's theory of the contract between himself and appellant. The jury found that appellee did not have full knowledge of the manner that appellant was applying the reserve funds to the payment of delinquent contracts generally prior to June 7, 1953. We are of the opinion the pleadings and evidence authorized the submission of Special Issues 4 and 9.

It is stated in Booty v. O'Connor, Tex. Civ.App., 287 S.W. 282, at page 291, (writ of error refused):

"The Supreme Court of the United States in Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618, thus states the

ground upon which equitable estoppel rests:

" 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.'

"We think this principle rules the case at bar. From the uncontroverted proof, it now seems to us to conclusively appear that the language and conduct of the appellees with reference to the relative status of the two liens they held led the appellant to buy the second one in reliance upon an understanding that it would be subordinate to theirs only in respect to priority of payment, and that, knowing then that he so acted they should not now be permitted to disappoint his expectation."

Under the findings of the jury and the record herein, we are unable to see where the appellee waived the original agreement. In the case of The Praetorians v. Strickland, Tex.Com.App., 66 S.W.2d 686, 689, it is said:

"Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed."

Appellee, according to the findings of the jury, did not voluntarily surrender his rights and no mischief followed by appellant continuing as it originally agreed to do as found by the jury. Appellant's points two, three and four are overruled.

By appellant's fifth point of error it is contended that appellee having failed to bring the suit until June 7, 1955, his entire cause of action was barred by the two-year statute of limitations and the trial court erred in refusing an instructed verdict for the appellant on such grounds. The trial court held that all payments credited to accounts from the reserve fund prior to June 7, 1953, were barred by limitations. The jury found that appellee did not have full knowledge of the manner that appellant was applying the reserve fund to the payment of delinquent contracts generally prior to June 7, 1953. The evidence being conflicting on this issue, the findings of the jury are binding upon this court. Appellant's point five is overruled.

Appellant presents its sixth and seventh points of error together. By the sixth point of error it is stated the court erred in submitting Special Issue 15 conditionally on a "No" finding on Special Issue 14. Special Issue 14 inquired if both parties fully understood the original agreement of how the reserve account was to be applied to uncollectible contracts. The jury answered they did so understand. Special Issue 15 asked if the agreement as implied from and evidenced by the conduct and course of dealings of appellee and appellant, after the appellee became fully aware of how the reserve was being withheld and applied, was that the reserve withheld was for the security of all contracts assigned by appellee to appellant. The seventh point of error insists that the findings of the jury in answer to Special Issue 12 was not supported by the evidence and was contrary to the overwhelming weight of the evidence. In answer to Issue 12 the jury found that appellee did not impliedly or actually consent to the manner in which appellant was handling the reserve fund within a short time after the appellant commenced applying the reserve generally to the payment of all delinquent contracts. It is our understanding of appellant's contention that appellee agreed to the way appellant was applying the reserve, and even if originally they agreed as contended by appellee, which appellant denied, that appellee agreed by his actions to the new arrangements and was thereby estopped to contend otherwise, and also that there was a novation. We are of the opinion that there was sufficient evidence to sustain the findings of the jury in reply to

all issues answered. If appellee did not impliedly or actually consent to the manner in which appellant was handling the reserve, but told appellant that was not according to the agreement, then the way appellant handled the reserve was not binding upon appellee. A novation may result from the substitution of a new obligation or contract between the parties with intent to extinguish the old obligation or contract. An essential element of every novation is a new contract to which all parties concerned must agree, and in the absence of such agreement or contract, a novation cannot be effected. In order to effect a novation, there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed. It is stated in Johnson v. Harrington, Tex.Civ.App., 139 S.W. 2d 202, 203, (writ dismissed by the Supreme Court; judgment correct):

"There are four essential elements to novation, an existing valid obligation, the agreement of all the parties, the extinguishment of the old contract by the substitution of a new one and the validity of the new agreement. 30 Tex.Jur. 386, para. 4."

Appellant's sixth and seventh points of error are overruled.

As to appellant's eighth point of error stating there was no evidence to support the findings of the jury in answer to Special Issue 5 holding there was no custom among organizations handling discount contracts to require a reserve fund to be used to take care of unpaid balances on all uncollectible accounts, we are unable to see where the issue was material herein, since the jury found appellee and appellant made the contract as contended by the appellee. Where parties make a certain contract to do a certain thing in a certain manner, the contract determines and not custom. Appellant's eighth point of error is overruled.

Judgment of the trial court is affirmed.