**CUSTOM LEASING, INC., Appellant,**

v.

**INCE OIL CO., Inc., et al., Appellees.**

**No. 376.**

Court of Civil Appeals of Texas.

Tyler.

June 27, 1968.

Rehearing Denied Sept. 19, 1968.

Key, Carr, Carr & Clark, Aubrey J. Fouts, Lubbock, for appellant.

Edward W. Napier, Lubbock, for appellees.

SELLERS, Justice.

Appellant, Custom Leasing, Inc., with its place of business located in Lubbock, Texas, is engaged in the vehicle leasing business. The appellee, Ince Oil Co., Inc., with its place of business located in Lubbock, is engaged in the business of a petroleum products jobber and in connection with the operation of its business hauls petroleum products from one place to another within the State of Texas.

Appellee, Ince Oil Co., Inc., being in need of certain vehicles offered for lease by appellant got in touch with appellant and negotiated a contract of rental of two truck tractors and two tank trailers. This contract prepared by appellant was

executed on May 7, 1963. The lease covered four pages and provided for a Schedule A to be attached to the base lease and made a part thereof. Under dates of July 12, 1963, and February 2, 1964, new Schedules were executed by the parties covering certain equipment, but otherwise the three Schedules are identical. All Schedules were attached to the base lease and expressly made a part thereof. This lease was for one year and for year to year thereafter until terminated as provided in the contract. As will hereafter appear, this suit was brought by appellee in the District Court to recover a credit of some several thousand dollars on appellant's charge of mileage rentals. The contract provided for a fixed charge per week for each leased vehicle, plus a charge for the mileage the equipment was used. It is this last charge that is involved in this appeal. This contract contains, among many other provisions, the following:

"2. OWNER AGREES:

"A. To furnish everything necessary to the proper and efficient operation and maintenance of the vehicles, including but not limited to fuel, oil, lubrication, tires and tubes, tire chains, antifreeze and repairs. To originally paint and letter the vehicles according to the LESSEE'S specifications and to thereafter wash, polish, repaint and reletter as required to maintain a neat appearance."

"C. To reimburse LESSEE for fuel, oil, lubricants and/or repairs that LESSEE necessarily had to purchase or contract for away from the OWNER'S garage, upon receipt from the LESSEE of a receipted bill therefor, subject to the limitations hereinafter provided."

"E. To be bound by the Insurance, Fuel and Storage clauses in 'Schedule A' attached hereto."

"3. LESSEE AGREES:

"K. To be bound by the Insurance, Fuel and Storage clauses in 'Schedule A' attached hereto."

"4. IT IS MUTUALLY AGREED:

"G. That this agreement, together with 'Schedule A', and any supplements or additions thereto which may be executed and attached hereto hereafter, constitute and will constitute the full, complete, absolute and entire agreement between the OWNER and LESSEE; that there are no oral representations, agreements or understandings affecting this instrument; that any future representation, agreement, understanding or waiver, to be binding upon the parties hereto, must be reduced to writing and attached hereto, and that the OWNER'S failure strictly to enforce any provision of this agreement shall not be construed as a waiver thereof, or as excusing the LESSEE from future performance.

"H. The parties hereto recognize that the rates quoted herein are based on present costs and labor conditions, and that the costs of operation may fluctuate and cannot be provided for, and that increases or decreases in the cost of labor and materials are a fair indication of general changes in cost to the OWNER, and agree that, in case there is an increase or decrease of ten per cent (10%) in labor actually paid by or material costs as billed to OWNER, they will then negotiate new rates in the schedule hereunder, based on such change in costs."

SCHEDULE "A":

"2. Fuel necessary to operate said leased vehicles will be provided by OWNER at its own expense. Mileage charges set forth in this schedule are based on .24 Price for fuel, including applicable City, State and Federal taxes, of $.105 per gallon. For each one cent

($.01) increase or decrease in the above price, including taxes, at the vehicles' basing point, the LESSEE shall be charged additional or receive a credit as follows: .002 per mile. Allowance for fuel purchased by LESSEE will be made by OWNER at $.25 per gallon, including taxes. Motor fuel tax returns will be prepared by Owner from its own records and those furnished by Lessee."

At the time the parties executed the original contract, Custom Leasing, Inc. was buying gasoline from Ince Oil Co., Inc. at the rate of 24 cents per gallon. Shortly after the contract was executed, Custom Leasing constructed its own gasoline storage tanks and thereafter continued to purchase gasoline from Ince at an agreed price of 21 cents per gallon.

It is without dispute in the evidence that appellant paid appellees three cents a gallon less for fuel to operate the trucks than the twenty four cents provided for in the contract and when the $.002 of one cent provision is applied reducing the mileage charge due appellee $.006 per mile, you have the credit allowed appellee by the trial court in the sum of $6,096.58 to be applied as a credit on the mileage charge by appellant.

The appellant in its answer pleaded novation of the original contract of May 1963, and also a waiver by appellee of the charges for the reduction of the three cent charge in the price of gasoline paid by appellant. Both sides filed motions for summary judgment and the court after considering the motions with the pleading, affidavits of both parties, and depositions on file, granted the motion of appellees and rendered judgment for appellees as above set out. The appellant having plead that the contract between the parties had been terminated, the court denied the same, holding the contract between the parties still in force and effect.

The appellant's contention in this suit is to the effect that at the time the original contract of the parties was executed and the twenty-four cent provision inserted, it was paying appellee 24¢ per gallon retail for gas, but thereafter it put in storage equipment so that it could buy from appellee wholesale, which it contends was responsible for the three-cent reduction in the price and therefore the reduction it paid for gas wholesale should have no effect on the twenty-four cent provision which was at all times contained in the contract. The contract with the attached Schedules made no reference to wholesale costs. The contract as prepared by appellant is unusually clear and in our opinion is unambiguous and must be construed by the court from the language used and when this is done, we are of the opinion that the trial court reached the proper judgment.

The appellant contends that there was a new contract entered into on February 2, 1964, when the Schedule of that date was executed and attached to the original lease, and for this reason, a novation was created. We overrule this contention. The contract provides that:

"4. IT IS MUTUALLY AGREED:

"G. That this agreement, together with 'Schedule A,' and any supplements or additions thereto which may be executed and attached hereto hereafter, constitute and will constitute the full, complete, absolute and entire agreement between the owner and LESSEE; that there are no oral representations, agreements or understandings affecting this instrument; that any future representation, agreement, understanding or waiver, to be binding upon the parties hereto, must be reduced to writing and attached hereto, and that the OWNER'S failure strictly to enforce any provision of this agreement shall not be construed as a waiver thereof, or as excusing the LESSEE from future performance."

This Schedule did not change any of the provisions which are in controversy here and further it became a part of the original contract. It is the original contract that is involved here and no new contract was executed. Since there has been no new contract between the parties, there cannot be a novation. General Finance & Guaranty Co. v. Smith, Tex.Civ.App., 309 S.W.2d 531. Appellant has no allegation that the contract is the result of fraud, accident or mistake and since the same is unambiguous, it becomes the duty of this court to construe the law applicable to the same. In our opinion, the trial court has reached the correct judgment.

The judgment of the trial court will be affirmed.