**William Herbert HUNT, et al., Plaintiffs,**

v.

**BANKERS TRUST COMPANY, et al., Defendants.**

Civ. A. Nos. 3–86–1684–H, 3–86–2012–H.

United States District Court, N.D. Texas, Dallas Division.

March 26, 1987.

---

Ben L. Krage, Kasmir Willingham & Krage, Dallas, Tex., Stephen F. Gordon, Edwin A. McCabe, McCabe, Gordon, P.C., Boston, Mass., for plaintiffs.

Jim K. Choate, Dewey R. Hicks, Jr., John P. Lilly, Brice & Mankoff, Dallas, Tex., Frank G. Ker, Winslow Christian, Bank of America, Los Angeles, Cal., for Bank of America.

Robert F. Finke, Mayer, Brown & Platt, Chicago, Ill., Michael Niebruegge, Mayer, Brown & Platt, Houston, Tex., Carla R. Voelker, Richardson, Tex., for Bank of Montreal.

Fletcher L. Yarbrough, James E. Coleman, Peter Tierney, Tyler A. Baker, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., D. Ronald Reneker, Bird & Reneker, Dallas, Tex., for the Bank of Nova Scotia (Intervention Case Only).

James G. Ulmer, J. Michael Baldwin, Baker & Botts, Houston, Tex., Robert W. Jordan, Erin Y. Baker, Baker & Botts, Dallas, Tex., for Bank of Scotland.

Robert M. Cohan, Lee M. Simpson, Cohan, Simpson, Cowlishaw, Aranza & Wulff, Dallas, Tex., David B. Eizenman, Moses & Singer, Robert P. Blank, Burton M. Freeman, Bankers Trust Co., New York City, for Bankers Trust Co.

James C. Kean, James E. Babcock, Thomas H. Lee, Dotson, Babcock & Scofield, Houston, Tex., Henry L. Goodman, Andrew D. Gottfried, Zalkin, Rodin & Goodman, New York City, for Chemical Bank.

Kenneth R. Wynne, Bracewell & Patterson, Houston, Tex., Robert H. MacKinnon, Mark P. Zimmett, Shearman & Sterling, New York City, for Citibank, N.A.

Michael M. Baylson, John Horstmann, Duane, Morris & Heckscher, Philadelphia, Pa., Steven Gutman, Legal Dept., European American Bank, New York City, Mike Joplin, Strasburger & Price, Dallas, Tex., for European American Bank & Trust Co.

Michael Lowenberg, Richard C. Levin, Maureen Armour, Nancy Ratchford, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for First City Nat. Bank of Houston.

James G. Ulmer, J. Michael Baldwin, Baker & Botts, Houston, Tex., Robert W. Jordan, Erin Y. Baker, Baker & Botts, Dallas, Tex., for First Interstate Bank of California.

W. Ted Minick, Winstead, McGuire, Sechrest & Minick, Houston, Tex., Jay J. Madrid, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., Peter J. Kilchenmann, Lynn A. Goldstein, The First National Bank of Chicago, Law Dept., Chicago, Ill., for The First Nat. Bank of Chicago.

J. Carlisle DeHay, Jr., DeHay & Blanchard, Dallas, Tex., David A. Ranheim, Linda

M. Freyer, Dorsey & Whitney, Minneapolis, Minn., for the First Nat. Bank of St. Paul.

Thomas A. Graves, Ernest E. Figari, Jr., James Pulis, Johnson & Swanson, Dallas, Tex., for InterFirst Bank—Dallas, N.A.·

Melvyn L. Cantor, John J. Kerr, Jr., Thomas C. Rice, Wm. O. Murphy, Simpson, Thacher & Bartlett, New York City, Alfred H. Ebert, Jr., Andrews & Kurth, Houston, Tex., Charles R. Haworth, Andrews & Kurth, Dallas, Tex., for Manufacturers Hanover Trust Co.

Daniel Williams, Paul B. Zuydhoek, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., William J. Brennan, Phillips, Lytle, Hitchcock, Blaine & Huber, New York City, Stan McMurry, Rain Harrell Emery Young & Doke, Dallas, Tex., for Marine Midland Bank, N.A.

W. Frank Carroll, Irvin C. Ness, Martha J. Hardwick, Stinson, Mag & Fizzell, Dallas, Tex., for Mellon Bank, N.A.

James P. Grove, IV, Rex H. White, Jr., White & Grove, P.C., Austin, Tex., Vincent S. Walkowiak, Fulbright & Jaworski, Dallas, Tex., James C. Slaughter, Fulbright & Jaworski, Houston, Tex., for National Westminster Bank, P.C., International Westminster Bank.

Jerry P. Jones, David R. McAtee, Timothy R. McCormick, Thompson & Knight, Dallas, Tex., W. Michael Byrd, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for RepublicBank Dallas, N.A. (Intervention Case Only).

Jim K. Choate, Dewey R. Hicks, Jr., John P. Lilly, Brice & Mankoff, Dallas, Tex., Carol Ann Bartlett, Senior Counsel, Royal Bank of Canada, Law Dept., Montreal, Quebec, for Royal Bank.

James G. Ulmer, J. Michael Baldwin, Baker & Botts, Houston, Tex., Robert W. Jordan, Erin Y. Baker, Baker & Botts, Dallas, Tex., for Security Pacific Nat. Bank.

Jess Hall, Jr., D. Mitchell McFarland, James W. Paulsen, Liddell, Sapp & Zivley, Houston, Tex., Vera R. Bangs, Liddell, Sapp & Zivley, Dallas, Tex., for Texas Commerce Bank Nat. Ass'n.

Ronald E. Cook, R.T. Nassberg, Mayor, Day & Caldwell, Houston, Tex., for the Toronto Dominion Bank.

Walter L. Stratton, Mitchel A. Karlan, Gibson, Dunn & Crutcher, New York City, Thomas Craddock, Gibson, Dunn & Crutcher, Dallas, Tex., Thomas B. Anderson, Jr., Vernon O. Teofan, Freytag, Perry, LaForce, Rubinstein & Teofan, Dallas, Tex., for Wells Fargo Bank, N.A.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court are the Penrod Banks'[1] Motion for Summary Judgment, Citibank's Motion for Partial Summary Judgment, and First National Bank of Chicago's Motions for Partial Summary Judgment on the Foreign Exchange Debt and the Hitachi Letter of Credit, all filed November 6, 1986; the Placid Banks'[2] Motion for Partial Summary Judgment filed December 5, 1986; National Westminster's and International Westminster's Motion for Partial Summary Judgment filed January 6, 1987; Marine Midland's Motion for Partial Summary Judgment filed January 16, 1987; Plaintiffs' Opposition filed January 27, 1987; and the Replies of the Penrod Banks, the Placid Banks, Marine Midland, and the

1. The Penrod Banks include: Manufacturers Hanover Trust Co.; First National Bank of Chicago; Citibank, N.A.; Bank of American National Trust and Savings Ass'n; Chemical Bank; Bankers Trust Co.; European American Bank; Bank of Nova Scotia; Royal Bank of Canada; Texas Commerce Bank, N.A.; First City National Bank of Houston; First National Bank of St. Paul; and Wells Fargo Bank, N.A. Manufacturers Hanover is the agent bank.

2. The Placid Banks include: RepublicBank Dallas, N.A.; Bankers Trust Co.; Bank of Montreal;

Citibank, N.A.; First City National Bank of Houston; First Interstate Bank of California; Manufacturers Hanover Trust Co.; Mellon Bank, N.A.; Security Pacific National Bank; Texas Commerce Bank National Ass'n; Bank of Nova Scotia; Wells Fargo Bank, N.A.; European American Bank; InterFirst Bank Dallas, N.A.; Toronto–Dominion Bank; the Governor and Co. of the Bank of Scotland; Marine Midland Bank, N.A.; and National Westminster Bank Group. RepublicBank is the agent bank.

Westminster group, all filed February 9, 1987; together with the briefs and exhibits submitted by the parties in support of these filings. The Court heard oral argument on the motions on March 16, 1987.

In their motions the Banks seek enforcement of certain loan agreements, notes, and a guaranty against Plaintiffs. The Court concludes that summary judgment must be DENIED on the basis of two circumstances, neither of which would alone suffice to avert summary judgment. The first is that Plaintiffs in their pleadings and affidavits assert defenses that, if established, would be legally effectual to bar enforcement of the debt instruments. The second is that discovery is yet at an early stage in this case, and Plaintiffs may not be required to support their defenses with detailed summary judgment proof until after an adequate opportunity to discover such evidence. The Court notes, however, that even those defenses that the Court concludes to be legally effectual against summary judgment at this time may not suffice against a future motion if after adequate opportunity for discovery Plaintiffs fail to raise genuine fact issues as to those defenses.

The Court also concludes that at least four of the defenses asserted by Plaintiffs are legally ineffectual to prevent summary judgment on the loan agreement and notes, even if these defenses were conclusively proved. Finally, the Court makes no decision regarding the availability of interim restitutionary relief to the parties prior to final resolution of this case.

### Background

The following facts are not disputed. In 1983 Placid Oil Company and certain wholly-owned subsidiaries executed an agreement (the "Placid Agreement") with the Placid Banks under which the Placid Banks loaned more than one billion dollars. The debt was evidenced by notes executed by Placid and the subsidiaries. Placid also executed a guaranty of the borrowers' obligations under the Placid Agreement and notes.

In 1984 Penrod Drilling Company executed an agreement (the "Penrod Agreement") with the Penrod Banks under which the Penrod Banks loaned approximately $850 million in term and revolving credits. The debt was evidenced by notes executed by Penrod and the Penrod partners, the Nelson Bunker Hunt, Lamar Hunt, and William Herbert Hunt Trust Estates. Both the Placid Agreement and the Penrod Agreement provided in part for the restructure of substantial pre-existing debts.

Toward the end of 1985 and during the first few months of 1986, Plaintiffs and the Banks engaged in negotiations concerning rescheduling the indebtedness under the Placid and Penrod Agreements. On June 24, 1986 Plaintiffs filed suit against the Banks. The Banks counterclaimed to collect the indebtedness.

The Placid borrowers failed to make a scheduled payment of principal on March 27, 1986. Affidavit of D. Rogers, Appendix to Placid Banks' Motion at tab 18. The failure to make this payment constituted a default under the Placid Agreement entitling the Placid Banks to accelerate the debt. *See* Placid Agreement at § 7.1. The agent bank declared acceleration and gave notice and demand to the Placid borrowers. *See* Affidavit of Rogers. The court finds that at the present time, at least $705,050,-450.72 in principal alone remains unpaid under the Placid Agreement. *See* Exhibit A, attached to Placid Banks' Motion.

The Penrod Borrowers failed to make a scheduled payment of interest on May 27, 1986 or within five days after that date. Affidavit of J. Hansen, Appendix to Penrod Banks' Motion at tab 2. This failure constituted a default under the Penrod Agreement. *See* Penrod Agreement at § 9. The Penrod Agreement and notes provided for automatic acceleration. *Id.* The Court finds that at the present time, at least $714,210,338.21 in principal alone remains unpaid under the Placid Agreement. *See* Affidavits, Appendix to Penrod Banks' Motion at tabs 2–14.

Plaintiffs have made no payments since these initial defaults. *See* Affidavits of Rogers and Hansen. They do not dispute

that they executed and delivered the loan agreements and notes and received the loan funds. They do not dispute and the Court finds that the principal amounts set forth above, *viz.*, $705,050,450.72 and $714,210,338.21, remain unpaid. However, Plaintiffs assert a number of claims and defenses as grounds for avoidance of or offset against any obligations under the loan agreements, guaranty, and notes.

The following summary briefly recounts the parties' allegations and contentions. Plaintiffs allege that before execution of the loan agreements, the Banks made fraudulent promises and misrepresentations and concealed material facts. Plaintiffs allege that the Penrod Banks knowingly insisted on an unrealistic payment schedule in the Penrod Agreement in order to ensure Penrod's later default and enable the Penrod Banks to require additional collateral. Plaintiffs allege that the Banks conspired to monopolize the offshore drilling industry. Plaintiffs allege that since execution of the loan agreements, the Banks have deliberately taken various actions that have impaired Plaintiffs' ability to repay the loans.

Against the Banks' motions for summary judgment Plaintiffs assert as defenses set-off and recoupment, promissory and equitable estoppel, fraud in the inducement, impairment of performance, bad faith, breach of fiduciary duty, Texas antitrust law, federal antitrust law, conspiracy to monopolize, the Bank Holding Company Act, the Texas Miscellaneous Corporation Laws Act, and impairment of collateral. In addition, Plaintiffs point out that discovery in this case is still at an early stage. They contend that they therefore may not be required to support their defenses with detailed summary judgment proof.

Generally, the Banks deny any misconduct and contend that they are entitled to summary judgment enforcing the loan agreements, notes, and guaranty. The Banks contend that the defenses asserted by Plaintiffs are legally ineffectual to prevent summary judgment and that the defenses are unavailable to Plaintiffs on the basis of Plaintiffs' allegations.

*Summary Judgment*

Summary judgment is proper when the pleadings and evidence filed show that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56. Summary judgment should be granted if the nonmovant fails to make a showing sufficient to establish each element of his claim or defense as to which he will bear the burden of proof at trial—*if* he fails to do so after adequate opportunity for discovery. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *accord, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In accord with the Banks' wishes, the Court deferred the commencement of depositions until March 30, 1987; considerable other discovery also remains. *See* Letter of the Court dated February 11, 1987. Under Rule 56(f) a diligent party must be given a reasonable time to conduct discovery necessary to prepare his case. *See* Wright, Miller, & Kane, 10A *Federal Practice and Procedure,* § 2741 (2d ed. 1983) at 541 [hereinafter cited as *Wright*]; *accord, Parrish v. Board of Commissioners,* 533 F.2d 942, 946–48 (5th Cir.1976). The sheer complexity, size, or significance of a case may be a sufficient ground for deferring decision of a motion for summary judgment to permit further discovery. *See Wright* at 552. The Court concludes that summary judgment would be improper at this point as to any defense raised by Plaintiffs' pleadings and affidavits that is legally effectual to prevent enforcement of the loan agreements and notes and as to which evidence may exist within the possession or control of the Banks. *See* Affidavit of S. Susman filed January 27, 1987.

*Choice of Law*

The Placid Agreement provides that it is governed by Texas law. *See* Placid Agreement at § 9.6, Appendix to Placid Banks' Motion at tab 1. The Placid Guaranty provides that it is governed by Texas law. *See* Placid Guaranty at § 10(f), Appendix to

Placid Banks' Motion at tab 19. The Penrod Agreement provides that it is governed by New York law. *See* Penrod Agreement at § 11.10, Appendix to Penrod Banks' Motion at tab 1. Generally, the parties agree that issues arising in connection with the Placid Agreement and the Placid Guaranty are governed by Texas law, that issues arising in connection with the Penrod Agreement are governed by New York law, and that with respect to most matters relevant for the present decision, Texas and New York law are similar. *See* Placid Banks' Brief in Support of their Motion at 6; Penrod Banks' Memorandum in Support of their Motion at 4; Plaintiffs' Opposition at 18. In general, the Court finds these conclusions regarding choice of law to be reasonable and will treat them as determinative for purposes of the present decision unless otherwise noted.

### Matters that Do Not Prevent Enforcement of the Debt Instruments

The Court concludes that the following matters asserted by Plaintiffs as defenses to the Banks' motions are legally ineffectual to defeat or delay a judgment enforcing the loan agreements and notes: setoff and recoupment, federal antitrust law, conspiracy to monopolize, and the Bank Holding Company Act.

■ *A. Setoff and Recoupment.* Setoff is a demand asserted to diminish or extinguish a plaintiff's demand that arises out of a transaction different from the one on which the plaintiff has sued. J. Moore, 3 *Moore's Federal Practice* ¶ 13.02 (2d ed. 1985). Recoupment is a demand arising out of the same transaction as the plaintiff's claim. *Id.* Setoff and recoupment apply to counterclaims within Federal Rule of Civil Procedure 13. *Id.* Setoff applies to permissive counterclaims; recoupment, to compulsory counterclaims.

■ Plaintiffs have asserted in this suit various claims for damages against the Banks. Plaintiffs contend that the Court should not grant summary judgment in favor of the Banks' counterclaims until Plaintiffs' claims for damages have been deter-

mined, on the ground that Plaintiffs are entitled to set off or recoup any amount they may be awarded from the Banks against any award in the Banks' favor.

Setoff and recoupment are available under both Texas and New York law. *See Frederick v. United States,* 386 F.2d 481, 487 (5th Cir.1967); *Pennsylvania R.R. v. Miller,* 124 F.2d 160, 162 (5th Cir.1942); *New York Conference Ass'n of Seventh Day Adventists v. 915 James St. Assocs., Ltd.,* 38 A.D.2d 235, 328 N.Y.S.2d 756, 759 (App.Div.1972). None of the courts in cases cited by Plaintiffs have held that setoff and recoupment in and of themselves are defenses to summary judgment, however.

Moreover, as the Banks point out, if Plaintiffs' contention that the possibility of setoff or recoupment bars summary judgment were correct, summary judgment could never be granted in any case in which the nonmovant counterclaimed for damages, even if the counterclaim in and of itself were legally ineffectual to prevent summary judgment. *Kelly v. Kosuga* and a multitude of other cases would have been wrongly decided. *See* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959). The Court rather considers that setoff and recoupment may be relevant to decision of whether to direct entry of a final judgment under Federal Rule of Civil Procedure 54(b) but concludes that they are legally ineffectual to prevent summary judgment. *See Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7–13, 100 S.Ct. 1460, 1464–67, 64 L.Ed.2d 1 (1980) (reversing court of appeals' holding that the possibility of setoff precluded 54(b) certification absent a showing of harsh or unusual circumstances, on ground that district court's certification was reviewable only for abuse of discretion).

*B. Federal Antitrust Law; Conspiracy to Monopolize.* Plaintiffs allege that the Banks conspired to monopolize the offshore contract drilling industry and fix drilling rates. Plaintiffs also allege that when Penrod refused to join the conspiracy, the banks retaliated against Penrod. In addition, Plaintiffs contend that a provi-

sion in the Penrod Agreement restricting Penrod from giving working interest discounts to its customers constitutes a per se illegal agreement to eliminate discounts. Plaintiffs contend that these and other violations of antitrust law render the loan contracts unenforceable.

In *Kelly v. Kosuga* the Supreme Court held that an antitrust violation is a defense to enforcement of a contract only if the judgment of a court enforcing the contract would itself be enforcing the precise conduct made unlawful by federal antitrust law. 358 U.S. at 520, 79 S.Ct. at 431. Otherwise, the Court stated, courts must be guided by the general policy against permitting people to get other people's property for nothing. *Id.*, citing *Continental Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486 (1909) (Holmes, J., dissenting). Despite the allegations with which Plaintiffs attempt to surround the loan agreements, the Court concludes that the loans in the present case like the sale in *Kelly* constitute "intelligible economic transactions" in themselves and that enforcement of them would not amount to enforcement of unlawful conduct. *See Kelly*, 358 U.S. at 521, 79 S.Ct. at 432.

The authorities cited by Plaintiffs are not contrary to this conclusion. In *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.* the Fifth Circuit held that a defense based on illegal tying against a suit for breach of contract was properly dismissed. 677 F.2d 1045, 1061 (5th Cir.1982). In *Catalano, Inc. v. Target Sales, Inc.* the Supreme Court held that a horizontal agreement among wholesalers to eliminate short-term credit to retailers was a form of price-fixing and was illegal per se. 446 U.S. 643, 650, 100 S.Ct. 1925, 1929, 64 L.Ed.2d 580 (1980). Plaintiffs contend that vertical price-fixing is also illegal per se and that the restriction in the Penrod agreement against working interest discounts constituted vertical price-fixing. However, none of the cases cited by Plaintiffs involved a restriction imposed on a single seller, nor has the Court found any such case.

As interpreted by Plaintiffs, the exception to the rule of *Kelly* and its progeny is so expansive as to engulf the general rule. The Court concludes that Plaintiff's allegations of federal antitrust violations and conspiracy to monopolize do not bar summary judgment enforcing the loan agreements and notes.

*C. Bank Holding Company Act.* Plaintiffs allege that the Placid and Penrod Agreements called for tying arrangements illegal under the Bank Holding Company Act and contend that this illegality bars enforcement of the agreements. The Court disagrees with this contention for reasons analogous to those considered by the Supreme Court in *Kelly* and referred to by the Seventh Circuit in *Exchange National Bank v. Daniels*, 768 F.2d 140, 144 (7th Cir.1985). The Court concludes that Plaintiffs' defense based on the Bank Holding Company Act is ineffectual to prevent enforcement of the loan agreements.

*Matters that Prevent Summary Judgment Before Opportunity for Discovery*

The Court concludes that the following matters as alleged by Plaintiffs and supported by their affidavits prevent summary judgment enforcing the loan agreements and notes at this early stage of discovery.

*D. Fraud in the Inducement.* Plaintiffs have alleged that they relied on various fraudulent promises, misrepresentations, and material concealments by the Banks in entering the loan agreements. Plaintiffs have submitted affidavits alleging that the Banks promised that if necessary, revised payment schedules would be negotiated. *See* Exhibits to Plaintiffs' Opposition. Under both Texas and New York law, fraud in the inducement is a defense to enforcement of a contract. *See Turner v. Houston Agricultural Credit Corp.*, 601 S.W.2d 61, 64 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *American Imagination Corp. v. W.R. Pierce & Assocs., Inc.*, 601 S.W.2d 147, 148 (Tex.Civ. App.—El Paso 1980, no writ); *Centronics Financial Corp. v. El Conquistador Hotel*

*Corp.*, 573 F.2d 779, 782 (2d Cir.1978); *Millerton Agway Coop., Inc. v. Briarcliff Farms, Inc.*, 17 N.Y.2d 57, 268 N.Y.S.2d 18, 21, 215 N.E.2d 341, 343 (1966). Accordingly, Plaintiffs' allegations of fraud in the inducement, if admissible, prevent summary judgment at this point in the litigation.

Under Texas and New York law, however, the parol evidence rule bars evidence of oral or extrinsic representations made before or contemporaneously with the execution of a written contract when offered for the purpose of altering the terms of the contract.[3] *See Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 222 (Tex. 1977); *Pan American Bank v. Nowland*, 650 S.W.2d 879, 885 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *American Imagination*, 601 S.W.2d at 148; *Braten v. Bankers Trust Co.*, 60 N.Y.2d 155, 162, 468 N.Y.S.2d 861, 864, 456 N.E.2d 802, 805 (1983). If evidence of the misrepresentations alleged in the present case is barred, Plaintiffs' defense of fraud in the inducement is effectively precluded and cannot prevent summary judgment.

Exceptions to the parol evidence rule exist under both Texas and New York law, however, and the main dispute with respect to this defense concerns the scope of those exceptions. In Texas, evidence of oral statements is admissible to show fraud in the inducement, but the exception is narrower when the contract is a promissory note. *See Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 491 (Tex.1978). In

that instance the fraud alleged must amount to some kind of "trickery, artifice, or device" in addition to a mere representation to the maker that the lender will not require him to pay on the note. *Id.* at 493.

The issue of whether the Placid Banks engaged in "trickery" is necessarily one of fact.[4] Accordingly, summary judgment may not be granted on the Placid Agreement, guaranty, and notes before Plaintiffs have had an adequate opportunity to discover any evidence relevant to that issue.[5]

■ The Court reaches the same result under New York law with respect to the Penrod Agreement. As in Texas, in New York parol evidence is admissible to show fraud in the inducement. *See Centronics*, 573 F.2d at 782; *Millerton*, 17 N.Y.2d at 61, 268 N.Y.S.2d at 21, 215 N.E.2d at 343. This rule is subject to limitations, however. The limitation of greatest concern to the Court is that evidence of fraud in the inducement is barred if the contract contains a specific recital by the party alleging fraud that precludes his claim of reliance on the alleged fraudulent statements. *See Centronics*, 573 F.2d at 782; *Citibank v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 309, 485 N.E.2d 974, 974 (1985).

The Penrod Banks point to several provisions in the Penrod Agreement and notes that the Penrod Banks contend bar Plaintiffs' fraud in the inducement defense under New York law.[6] The Court agrees that

---

**3.** The Court notes that Plaintiffs' quotation from section 11.4 of the Penrod Agreement in their Opposition completely inverted the meaning of that section.

**4.** Examination of cases applying the *Broaddus* rule reveals that Texas courts have found trickery only when the maker of the note sued on was not the person who actually received the loan proceeds. *See, e.g., Helmcamp v. InterFirst Bank Wichita Falls*, 685 S.W.2d 794 (Tex.App.—Ft. Worth 1985, writ ref'd n.r.e.); *Berry v. Abilene Savings Ass'n*, 513 S.W.2d 872 (Tex.Civ. App.—Eastland 1974, writ ref'd n.r.e.); *Viracola v. Dallas Int'l Bank*, 508 S.W.2d 472 (Tex.Civ. App.—Waco 1974, writ ref'd n.r.e.). No Texas court has recognized this factor as determinative; and even if the factor were recognized, the trickery issue would remain one of fact. However, the Court does not foreclose the possibility that it will recognize this factor in the future.

**5.** The Placid Banks also contend that under Texas law, fraud may not be predicated on a mere omission or concealment absent a fiduciary or confidential relationship between the parties. *See Southwest E & T Suppliers, Inc. v. American ENKA Corp.*, 463 F.2d 1165, 1167 (5th Cir.1972); *Howard v. County of Nolan*, 319 S.W.2d 947, 950 (Tex.Civ.App.—Eastland 1959, no writ). However, whether a fiduciary or confidential relationship existed in the present case is an issue of fact. *See* this opinion *infra* at section E.

**6.** Specifically, the Penrod Banks cite section 6.1 of the Penrod Agreement, which provides that the Penrod loan documents were duly executed by the borrowers and are valid and enforceable in accordance with their terms; section 11.1(a) of the Penrod Agreement, which provides that the loan documents may be modified in writing *except* that there may be no modification or extension of payment amounts or due dates and

these provisions probably suffice to bar many of Plaintiffs' allegations. The Court cannot at this time preclude the possibility, however, that after further discovery Plaintiffs might be able to offer proof of fraud in the inducement that might not be barred by these provisions.

The other limitations invoked by the Penrod Banks are the policy in favor of protecting banks[7] and the rule that parol evidence is inadmissible to attack selected provisions of a contract rather than the whole.[8] The Court does not now decide the effect of these limitations except to conclude that they are not grounds for precluding Plaintiffs' fraud defense to the Penrod agreement at this point in the litigation.

■ *E. Breach of Fiduciary Duty.* Plaintiffs allege that their relationship with the Banks was a fiduciary or confidential relationship and that the Banks breached their fiduciary duty toward Plaintiffs. Under Texas law breach of fiduciary duty may be a defense to a contract. *See Thigpen v. Locke,* 363 S.W.2d 247, 252 (Tex. 1963). A fiduciary relationship may exist as a matter of law; for example, the attorney-client relationship, partnership, and trusteeship are fiduciary relationships as a matter of law. *See id.* at 253. A fiduciary or confidential relationship may also exist as a matter of fact, based on the facts and circumstances. *See id.; see also Texas Bank and Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980).

New York law is similar with respect to this defense. *See Grumman Allied Industries v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984) (breach of fiduciary duty may be a defense to a contract); *Beneficial*

*Commercial Corp. v. Murray Glick Datsun,* 601 F.Supp. 770 (S.D.N.Y.1985) (fiduciary duty may exist based on control and responsibility; confidential relationship may arise from business dealings). If Plaintiffs were sophisticated businessmen and if their dealings with the Banks were at arms'-length, these factors would weigh heavily against a finding of fiduciary duty. Nonetheless, the existence and breach of any fiduciary duty are factual issues that may not be determined against Plaintiffs at this early stage of discovery.

■ *F. Impairment of Performance.* Plaintiffs allege various actions by the Banks that they contend impaired their ability to perform their obligations under the loan agreements and notes. Under Texas law interference by a party to a contract that prevents the other party from performing an obligation under the contract excuses performance of the obligation. *See Miller v. Baum,* 400 F.2d 176, 178 (5th Cir.1968); *O'Shea v. Int'l Business Machines Corp.,* 578 S.W.2d 844, 846 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).[9] New York law is to similar effect. *See United States v. Bedford Assocs.,* 548 F.Supp. 732, 737 (S.D.N.Y.1982); *Young v. Whitney,* 111 A.D.2d 1013, 490 N.Y.S.2d 330, 332 (1985). Whether the Banks prevented Plaintiffs' performance of their obligations under the loan agreements and notes involves issues of fact that may not be resolved against Plaintiffs at this early stage of discovery.

*Other Matters*

The Court reserves decision as to whether the following matters asserted by Plaintiffs are legally effectual to prevent sum-

---

no change in the interest rates provided; and the notes, which state that the borrowers "unconditionally promise to pay...."

7. *See Long Island Trust Co. v. Dicker,* 659 F.2d 641, 649 n. 15 (5th Cir.1981) (applying New York law); *Hong Kong Deposit & Guaranty Co. v. Hibdon,* 611 F.Supp. 224, 229 (S.D.N.Y.1985).

8. *See Hong Kong Deposit, supra* note 7, 611 F.Supp. at 229; *Bersani v. General Accident Fire & Life Assurance Corp.,* 36 N.Y.2d 457, 460–61, 369 N.Y.S.2d 108, 112, 330 N.E.2d 68, 71 (1975).

9. The Court notes, however, that interference with contractual or business relations, as distinguished from direct prevention of performance, is not a defense to enforcement of a debt, although it constitutes an independent tort. *See State Nat'l Bank v. Farah Manufacturing Co.,* 678 S.W.2d 661, 688 (Tex.App.—El Paso 1984, writ dism'd) (in action brought against lender after debt already paid, debtor had claim for tortious interference with contractual or business relations).

mary judgment on the loan agreements and notes.

*G. Promissory and Equitable Estoppel.* As with fraud in the inducement, the main dispute concerns the applicability of the parol evidence rule. The Banks contend that the rule precludes Plaintiffs' estoppel defense; Plaintiffs disagree.

The general rule in Texas is that evidence of promissory estoppel is not excepted from the parol evidence rule. *See Stavert Properties, Inc. v. RepublicBank,* 696 S.W.2d 278, 282 (Tex.Civ.App.—San Antonio 1985, writ ref'd n.r.e.). However, the language used by courts in stating this rule makes uncertain whether the rule applies when the validity of the contract to be protected by the rule is also attacked on grounds of fraud. *See Wheeler v. White,* 398 S.W.2d 93, 97 (Tex.1965) (promissory estoppel might be available when there was no "legally sufficient" contract); *Prince v. Miller Brewing Co.,* 434 S.W.2d 232, 240 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) (promissory estoppel precluded by existence of "valid" contract).

New York law is to similar effect. *See Leumi–Financial Corp. v. Richter,* 17 N.Y.2d 166, 173, 269 N.Y.S.2d 409, 413, 216 N.E.2d 579, 582 (1966) (distinguishing *Millerton* on ground that that case involved fraud); *Imperator Realty v. Tull,* 228 N.Y. 447, 451, 127 N.E. 263, 264 (1920) (written contract that appeared entire and free from fraud could not be attacked by parol evidence of promissory estoppel).

 The Court concludes that under both Texas and New York law, promissory estoppel does not constitute an independent exception to the parol evidence rule and therefore would not in and of itself prevent summary judgment. A contrary conclusion would render the parol evidence rule nugatory; *see Joseph v. Mahoney Corp.,* 367 S.W.2d 213, 215 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.). Since the Court has not precluded Plaintiffs' fraud in the inducement defense to summary judgment, however, neither does it now conclude that promissory estoppel is unavailable. The Court reserves decision with respect to the legal effectuality of Plaintiffs' equitable estoppel defense.

*H. Impairment of Collateral.* Plaintiffs argue that various actions taken by the Placid Banks unjustifiably impaired the collateral for the Placid indebtedness and that Placid's liability on its guaranty of the indebtedness is consequently discharged. This argument is correct as far as it goes. Under both the Uniform Commercial Code and Texas common law, however, a guarantor in this situation is not discharged if he consented to the alleged impairment, and such consent may be given in advance in the guaranty itself. *See Tex.Bus. & Com. Code Ann.* § 3.606(a) (Vernon's 1968) & comment 2; *United States v. Proctor,* 504 F.2d 954, 956–57 (5th Cir.1974); *Schubiger v. First Newport Realty Investors,* 601 S.W.2d 218, 221 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

 In the present case, the consent given by Placid in its guaranty was express, specific, and sufficiently comprehensive to cover all actions actually constituting impairment of collateral, as distinguished from some more general ability of Placid to make payment. *See* Placid Guaranty at § 3(a), Appendix to Placid Banks' Motion at tab 19 (consent filling almost two pages single-spaced). No reason appears why this consent should not bind Placid, unless the entire transaction be found unenforceable on grounds other than impairment of collateral. Since Plaintiffs assert other defenses that are legally effectual against the loan agreements, guaranty, and notes, however, the Court does not conclude at this early point in the litigation that impairment of collateral is unavailable.

 *I. Bad Faith.* Plaintiffs allege that the Banks violated a duty of good faith and fair dealing; that is, that the Banks acted in bad faith toward Plaintiffs. The Court doubts whether bad faith constitutes an independent defense against enforcement of a funded debt, as distinguished from an affirmative claim for damages. *See State Nat'l Bank v. Farah, supra* note 9, 678 S.W.2d 661; *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752 (6th Cir.

1985). The Court reserves decision as to this defense at this time, however.

■ *J. Texas Miscellaneous Corporation Laws Act.* Plaintiffs allege that the indebtedness under the Placid Agreement mainly benefited Placid and that the Placid subsidiaries' execution of notes for that indebtedness was ultra vires under the Texas Miscellaneous Corporation Laws Act. *See Tex.Rev.Civ.Stat.Ann.* art. 1302–2.-06(A) (Vernon 1980). Placid is the sole shareholder of the subsidiaries.

Texas Business Corporation Act article 2.04(A) provides that lack of capacity of a corporation shall never be made the basis of any claim or defense at law or in equity. *Tex.Bus.Corp.Act Ann.* (Vernon 1980). However, article 2.04(B)(1) provides that a shareholder of a corporation may obtain an injunction against performance of an unauthorized act by his corporation pursuant to a contract if the court deems such relief to be equitable.[10] In the present case, Placid as sole shareholder of the subsidiaries and the Hunt Trust Estates as the shareholders of Placid seek to enjoin enforcement of the subsidiaries' notes on the grounds that the subsidiaries received inadequate consideration for the notes under Texas Miscellaneous Corporation Laws Act article 1302–2.-06(A) and that such relief would be equitable. Plaintiffs do not assert the Act in defense to enforcement against Placid.

The official comment to Texas Business Corporation Act article 2.04 explains that article 2.04 was intended to materially limit the availability of the doctrine of ultra vires but to preserve a corporate cause of action against directors and officers who have exceeded their authority. As applied to the facts alleged by Plaintiffs, the defense reduces to an assertion that the sole shareholder of a corporation is entitled to enjoin the corporation from paying on a note given for funds received by the shareholder, on the ground that the corporation lacked his consent to incur the obligation from which he benefited. The Court

doubts that issuance of an injunction in this situation could possibly be equitable. The issue, however, may be one of fact; the Court therefore reserves decision at this early stage as to the legal effectuality of this defense to prevent summary judgment against the Placid subsidiaries.

■ *K. Texas Antitrust Law.* Section 7.1(e) of the Placid Agreement defines default under that agreement to include any event of default under an agreement entered in 1982 entitled "Agreement Supplemental to Credit Agreement and Escrow Agreement" (the "Supplemental Agreement"). Plaintiffs contend that the default provisions referred to contained restrictions that violated the Texas antitrust law in effect both when the Supplemental Agreement and when the Placed Agreement were entered. They argue that the Placid Agreement incorporated the restrictions by reference. Although the law making the restrictions illegal has since been repealed, Plaintiffs point out that in *Savin Corp. v. Copy Distributing Co.*, a Texas court held that the old antitrust law was impliedly incorporated into a contract entered while that law was effective and that the contract, which violated the old law, therefore was not saved by repeal of the old law. *See* 716 S.W.2d 690, 692 (Tex.App. —Corpus Christi 1986, no writ).

On the other hand, the Banks allege that the Supplemental Agreement provided that it would be governed by Delaware law and contend that the reference to the Supplemental Agreement does not make the Placid Agreement unenforceable. Plaintiffs argue that a Texas court will not enforce a choice of law provision if the result would be contrary to Texas public policy. *See First Commerce Realty Investors v. K-F Land Co.*, 617 S.W.2d 806, 809 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). The Court doubts that Texas public policy would require that a choice of law provision in a contract be disregarded on the ground that the contract violated a

10. The statute specifically precludes the ultra vires defense but permits a shareholder to obtain an injunction on that ground. However, Texas courts do not appear to have relied on the distinction made by the statute. *See Inter-Con-*

*tinental Corp. v. Moody,* 411 S.W.2d 578 (Tex. Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.) (minority shareholder was entitled to intervene in action to enforce payment on note by his corporation).

repealed law. The Court reserves decision with respect to this defense, however.

### The Individual Banks' Motions

*The Motions of Marine Midland and the Westminster Group.* The Court is not unsympathetic to these Defendants' complaint that it has been roughly a year since Plaintiffs quit paying on the Placid debt and nine months since Plaintiffs filed the present suit, yet these Defendants still have heard no allegations of specific conduct by them that should prevent them from collecting the indebtedness they contend is owed them. The Court considers that these Defendants' position is similar to that of all the other Defendants, however, in that Plaintiffs have alleged defenses supported by affidavits which are legally effectual at this time to prevent enforcement of the Placid Agreement and notes

*The Motions of Citibank and First National Bank of Chicago.* Whether these Defendants are entitled to payment on the pre-existing debt obligations asserted in their motions depends on whether the Penrod Agreement amounted to a novation with respect to these obligations. Examination of the Penrod Agreement suggests that these pre-existing obligations were either incorporated into or superseded by the Penrod Agreement. *See* § 2; *see also* §§ 4.4(d), 4.1(c), & 4.4(e). At least, it does not appear and these Defendants do not contend that Plaintiffs owe full payment on both the pre-existing obligations and the Penrod Agreement.

A valid new contract is an essential element for novation. *Kinsella v. Merchants National Bank & Trust,* 34 A.D.2d 730, 311 N.Y.2d 759, 761 (1970); *Longhorn Flying Club, Inc. v. Dragoo,* 464 S.W.2d 189, 194 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.). If the Penrod Agreement is valid and enforceable, then it may have been an effective novation and the pre-existing contracts will have been extinguished. *See National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 643 (S.D.N.Y.1978); *Langlois v. Langlois,* 5 A.D.2d 75, 169 N.Y.2d 170, 173 (1957); *Longhorn,* 464 S.W.2d at 194; *Dallas Farm Machinery Co. v. Minneapolis–Moline Co.,* 324 S.W.2d 578, 580–81 (Tex.Civ.App.—Dallas 1959, no writ). If, however, the Penrod Agreement is found to be invalid, then any pre-existing contracts may be enforceable. *See National American Corp.,* 448 F.Supp. at 643; *Custom Leasing, Inc. v. Ince Oil Co.,* 431 S.W.2d 653, 655–56 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Accordingly, the Court concludes that the enforceability of the pre-existing obligations should not be decided at this time.

### Conclusion

Plaintiffs have received huge loans from the Banks and have not paid the $705,050,-450.72 in principal outstanding under the Placid Agreement or the $714,210,338.21 in principal outstanding under the Penrod Agreement. The Court has not decided the availability of restitutionary relief or the part, if any, that such relief should play as this litigation progresses. By affidavits and pleadings Plaintiffs have set forth defenses that, though skimpy in details, when considered along with the preliminary state of discovery, suffice to prevent summary judgment on the loan agreements, notes, and guaranty at this time. The Banks' motions must therefore be, and hereby are, severally DENIED without prejudice.

SO ORDERED.